# WARNER *v.* SMITH.

### PATENTS; INTERFERENCES.

1. The interests of the public in the granting of patents are para-
mount to those of inventors.
2. Where for almost four years after conceiving his invention of a
button for use in connection with garment-supporters, the
inventor does nothing in the way of giving the public the
benefit of it, except to make one button a few months after
conception of the idea, which button he put aside and made no
use of, and he took no steps to follow up his invention until a
rival inventor filed an application in the Patent Office for a
similar device, although during such lapse of time there were
opportunities for doing so, and such a demand for the article
that it could readily have found a market, the presumption is
he had no completed or perfected invention, and to become
entitled to an award of priority he must adduce testimony to
overcome such presumption.

Patent Appeals. No. 95. Submitted May 12, 1898. Decided June 7, 1898.

HEARING on an appeal from a decision of the Commis-
sioner of Patents in an interference proceeding. *Reversed.*

*Messrs. Foster & Freeman* for the appellant.

*Mr. Robert C. Mitchell* and *Mr. Charles E. Mitchell* for the
appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

This is an appeal from the decision of the acting Com-
missioner of Patents in an interference case, wherein the
invention in controversy is stated to be:

" As a new article of manufacture a button having a stem
and a head, the head of a greater diameter than the stem,
a disk on the stem, and a rubber, bearing on the head, ex-
tending beyond the periphery thereof (of the head), and
held in position by the disk."

The button in controversy is for use in connection with

garment-supporters. The button in ordinary use has a smooth, polished, and unyielding head, the result of which is frequently to permit the garment folded over it to slip away and be released, while the button involved in this interference, having a yielding ring of rubber projecting beyond the head, presents a surface to which the fabric of the garment more readily adheres on slight pressure. The appellant Warner's specification distinctly calls for a rubber ring, as stated in the issue. Smith's claim seems to be somewhat broader, being for "a yielding flange formed of suitable resilient material." But in the view which we take of the case the difference is unimportant.

The appellant, Warner, was the first to file his application for a patent, which he did on January 4, 1895, and on being placed in interference he made his preliminary statement to the effect that he had conceived and disclosed the invention in June, 1894; that he made no model except a full-sized button in the same month; that he completed drawings of the invention in July of 1894, and that the buttons had not been manufactured commercially. Smith filed his application on October 15, 1895, upward of nine months after Warner, and in his preliminary statement claimed that he had conceived the invention about October 1, 1891; explained the invention to others about the same time; that he made a full-sized working button about January 1, 1892, and that on the last-mentioned day and since that time he had used the device, as he says, "to an extent sufficient to ascertain and determine its entire practicability and completeness."

As a matter of fact, the proof shows that he made one full-sized button about January, 1892, but put it aside and never made any use of it, and never followed up the invention in any way, until after Warner had come into the Patent Office. But the proof sufficiently shows, and it is so found by all the tribunals of the Patent Office, that he had his conception of the invention some time between Oc-

tober, 1891, and January, 1892, and this conclusion is not very seriously contested by the appellant. Warner, therefore, was the first to apply for a patent, and Smith the first to conceive the invention; and the determination of the controversy between them, so far as the present issue is concerned, depends upon the answer to be given to the question, whether the button made by Smith in January, 1892, was a reduction of the invention to practice, in the sense of the law, or was merely an experimental model or device, discarded and perhaps forgotten until the appearance of Warner in the same field of invention. This question the examiner of interferences decided in favor of Smith, the board of examiners in favor of Warner, and the acting Commissioner again in favor of Smith; and from the decision of the latter Warner has appealed to this court.

The board of examiners was further of opinion that there was no interference between the parties, inasmuch as Warner's device called for a rubber ring, while that of Smith was of leather or other equivalent resilient substance; and called the attention of the Commissioner to the view that no interference should have been declared. But the examiner of interferences and the acting Commissioner were of opinion that the two devices were mechanical equivalents of each other.

This difference of opinion we deem it unnecessary to consider, and this may not be the place to do so. But we concur with the board of examiners in its conclusion that there was no reduction of his invention to practice by the appellee, Smith, in January, 1892, or at any time afterward before the filing of Warner's application in the Patent Office; and that what he did was no more than an experiment that led to no practical results.

That the device constructed by the appellee in January of 1892 could have been used and worn upon the person, and might to some extent have served the purpose for which it was designed, might perhaps be conceded; but this does

13 Ct. App.—9

not necessarily constitute reduction to practice. Without entering into any special examination of the record for the purpose of supporting our opinion that what the appellee did in January, 1892, was no more than a mere experimental model, discarded by him as soon as made and apparently forgotten by him for several years afterward—for which we need only adopt the opinion of the board of examiners, in which we fully concur—we are disposed to rest our conclusion upon a broader basis.

If there is any provision of our Federal Constitution which more than any other is intended to give practical effect to that portion of the preamble to that instrument which recites that one of its six avowed purposes is to promote the general welfare, it is that clause which vests in the Congress of the Federal Union the power "to promote the progress of science and useful arts, by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries."

The provision, it will be noticed, is not to benefit the inventor primarily, but the public. The purpose is *"to promote the progress of science and useful arts,"* which are necessarily for the people at large; this result is to be reached in the shape of a bounty to inventors by the offer to them of a monopoly for a limited time. The interests of the public are therefore the primary consideration, and to these the privileges granted to inventors are secondary and subordinate. The consideration of the exclusive right secured to the inventor is the present and prospective benefit to accrue to the public from the use of the invention; and when that consideration fails, or when the purpose is thwarted by the inventor, the exclusive right ceases and is determined. When the inventor in any manner or for any reason refuses to give to the public the benefit of his invention, the public are entitled to withdraw from him the special protection accorded to him for his discovery. On this principle the inventor is required to be diligent in reducing his concep

tion or invention to practice; and it is usually the first who reduces to practice, and not the first who conceives, that is entitled in law to be regarded as the inventor. On this principle all our laws on the subject are based. By them a premium is placed upon diligence, and delay requires to be excused; and a delay of two years is, in many cases, regarded as an abandonment to the public. Even a much shorter delay, without sufficient explanation or excuse, is often regarded as evidence of laches, such as should preclude one guilty of it from advantage or benefit under the law. Can one who has made an invention, and who has locked it up in the secrets of his own exclusive knowledge, and who produces it only when some rival inventor has entered the field, be held to have acted in accordance with the policy of the law, or with the spirit and purpose of the constitutional provision? Such action, or inaction, as we might more properly term it, not only contravenes the interests of the public, but also operates to injure the rival inventor, who, in the meantime, enters the field of invention upon the faith of the conditions as they appear to exist, and upon which he is entitled to rely. Such rival inventor expends his time, his efforts, and his money in the elaboration of his conception in ignorance of the fact that any one else has been in the same field before him; and he goes into the Patent Office only to be confronted, after several months of effort there, with the claim of some one else, who then comes forward for the first time and alleges that he had the same invention long before. Probably such claimant is not barred by any statute from making his claim; and if he sufficiently proves it, he and not his competitor will be entitled to the patent; for it is to the first inventor, the first to conceive and to reduce into practice, that the law awards priority. But such conditions make it imperative upon him that he should prove his claim beyond all reasonable doubt; and the Patent Office and the courts are justified in presuming in such cases that what is claimed to be reduction to practice

is no more than mere experiment, until the contrary is clearly shown.

The appellee in this case, if we admit that he had the conception of this invention in the latter part of the year 1891, claims to have reduced it to practice in January of 1892, and thereafter did nothing and remained silent for three years and nine months, although there were several occasions when he might and should have spoken, if his invention was such as he now claims it to have been; and he made no movement whatever, either through the Patent Office, or otherwise, to give the public the benefit of it in any way. It is quite evident, too, that during all this time there was a demand for the article, and that it could readily have found a market. Nor is there any explanation in the record of the delay of application to the Patent Office. Under these circumstances all the presumption is in favor of the theory that the appellee had no completed or perfected invention in January of 1892, or at any time before the appellant came into the Patent Office, and he has failed to adduce any testimony sufficient to overcome the presumption. We are of opinion, therefore, that judgment of priority should be awarded to the appellant Warner.

The decision of the Commissioner of Patents is reversed and judgment of priority of invention is awarded to the appellant Warner.

The clerk of this court will certify this opinion and the proceedings in the cause in this court to the Commissioner of Patents, to be entered of record in his office, according to law.                                    *Reversed.*